IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ADRIANN McGEE, Administrator of the Estate of LeDarren Mixon**, <br><br> and <br><br> **JASMINE MURRAY**, <br><br>      New Party Plaintiff, <br><br> -vs- <br><br> **CITY OF WHITEHALL, et al**., <br><br>      Defendants. | CASE NO.   2:19-CV-379 <br><br><br> **JUDGE ALGENON L. MARBLEY** <br><br> **MAG. JUDGE CHELSEY M. VASCURA** <br><br><br><br> **JURY TRIAL DEMANDED** |

### FIRST AMENDED COMPLAINT

Plaintiffs Adriann McGee, Administrator of the Estate of LeDarren Mixon, and Jasmine Murray, for their complaint against Defendants City of Whitehall, Ronald L. Casto, Gary A. Baker, Jr., Joseph A. Danzey, City of Reynoldsburg, and John Does 1-3, allege as follows:

#### INTRODUCTION

1. This is a civil rights action. On January 5, 2018, LeDarren Mixon was asleep in his bed. He was lying next to his girlfriend, Plaintiff Jasmine Murray, who was eight months pregnant with their son. Defendants Casto, Baker, and Danzey entered the bedroom and shot toward LeDarren and Jasmine multiple times with high-powered rifles, striking and killing LeDarren.

1

2. This extrajudicial killing involved gratuitous, excessive, and objectively unreasonable force. LeDarren did not present any threat to the Defendants or anyone else when they shot and killed him in his own bed. This shooting was without any lawful justification and in violation of LeDarren's fundamental rights under the U.S. Constitution and Ohio law.

3. Plaintiff Jasmine Murray also did not present any threat to the Defendants or anyone else. Regardless, the Defendants fired multiple rifle rounds into the bed in which she slept, putting her at risk of death or great bodily harm and causing her extreme emotional distress.

4. The Cities of Whitehall and Reynoldsburg are likewise at fault for this illegal shooting through the written and unwritten policies, practices and/or customs of civil rights violations and unconstitutional practices of the Cities of Whitehall and Reynoldsburg and their Police Departments.

5. LeDarren's family and community are devastated by his unnessary and unjustified death at the hands of the Defendants. His two minor children are left without a father. Jasmine has also suffered injuries and damages. This civil rights action seeks accountability for violations of Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

6. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

7. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

8. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiffs' claims also occurred in this judicial district.

**PARTIES**

9. Plaintiff Adriann McGee is the duly appointed Administrator for the Estate of LeDarren Mixon. Ms. Mcgee brings this action as the Administrator of the Estate of LeDarren Mixon in her fiduciary capacity, for the benefit of the next of kin and heirs at law of LeDarren Mixon. Ms. McGee was appointed as the Administrator for the Estate of LeDarren Mixon on March 8, 2018 by the Franklin County Probate Court in Case No. 590181. At all times relevant, and at the time of his death, LeDarren Mixon was a resident of Franklin County, Ohio.

10. Plaintiff Jasmine Murray, at all times relevant to this complaint, resided in Franklin County, Ohio.

11. Defendant City of Whitehall was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Southern District of Ohio acting under the color of law. Defendant City of Whitehall is a "person" under 42 U.S.C. § 1983. Defendant City of Whitehall is the employer and principal of Defendants Casto and Baker and is responsible for the policies, practices, and customs of its Police Department.

12. Defendant Auxiliary Sergeant Ronald Casto was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Whitehall, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

13. Defendant Officer Gary Baker, Jr. was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Whitehall, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

14. Defendant Officer Joseph Danzey was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Reynoldburg, acting

within the scope of his employment and under the color of state law. He is sued in his individual capacity.

15. Defendants John Does 1-3, at all times relevant to the allegations made in this complaint, were duly appointed police officers employed by the Cities of Whitehall and/or Reynoldsburg, acting within the scope of their employment and under the color of state law. They are sued in their individual and official capacity.

16. Defendant City of Reynoldsburg was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Southern District of Ohio acting under the color of law. Defendant City of Reynoldsburg is a "person" under 42 U.S.C. § 1983. Defendant City of Reynoldsburg is the employer and principal of Defendant Danzey, and is responsible for the policies, practices, and customs of its Police Department.

## FACTS

17. LeDarren Mixon was only 28 years old at the time of the events giving rise to this complaint. Jasmine Murray was 24 years old.

18. In January of 2018, Defendant Casto was a fulltime firefighter for the Whitehall Division of Fire. He was also a part-time auxillary member of the Whitehall Police Department and was a member of the SWAT team as an Operator/Medic.

19. Defendants Baker is a patrol officer for Defendant City of Whitehall. Defendant Danzey is a patrol officer for the Defendant City of Reynoldsburg.

20. The Joint Eastside Tactical Response Team (JESTR) is a SWAT team comprised of Whitehall and Reynoldsburg police officers. JESTR was officially formed just weeks prior to the shooting of LeDarren Mixon.

21. On January 4, 2018 a Whitehall Sergeant sent a "one call" text and voice message requesting any available member of JESTR participate in the January 5, 2018 execution of a search warrant at 5300 Great Oak Way.

22. Upon receipt of this message, Defendant Casto contacted his Fire Captain seeking permission to participate in the execution of the search warrant.

23. In the early morning hours of January 5, 2018, Defendants Casto, Baker, Danzey, and John Does, along with other officers from Whitehall and Reynoldsburg, acted as a SWAT team and entered Plaintiffs' apartment at 5300 Great Oak Way.

24. At that time, LeDarren was asleep in his bedroom next to his pregnant girlfriend, Jasmine Murray.

25. Defendants Casto, Baker, and Danzey proceeded upstairs and entered the bedroom where LeDarren and Jasmine were both asleep on a mattress on the floor. The Defendant Officers did not seek any concealment or cover.

26. Without announcing themselves, Defendants Casto, Baker, and Danzey approached the bed and shot at LeDarren and Jasmine.

27. LeDarren and Jasmine were unarmed at the time the Defendants shot at them.

28. Defendants mortally wounded LeDarren in this extrajudicial killing.

29. Defendants Casto, Baker, and Danzey were each armed with high-powered rifles and shot multiple times. Defendant Casto fired between six and eleven rounds. Defendant Baker fired between six and sixteen rounds. Defendant Danzey fired between six and ten rounds.

30. The Defendants Officers fired rounds, paused, then fired additional rounds at LeDarren and Jasmine.

31. Terrified for her life and the life of her child, Jasmine curled into herself near the wall to try to protect herself and her baby from the gunfire.

32. Neither LeDarren nor Jasmine ever pointed or attempted to point a gun at Defendants Casto, Baker, or Danzey before Defendants shot.

33. Neither LeDarren nor Jasmine threatened Defendants or anyone else before Defendants shot.

34. Neither LeDarren nor Jasmine posed a threat to the safety of any Defendant or anyone else at the time Defendants shot.

35. The Defendant officers fired at LeDarren while he lay inches away from Jasmine, who was visibly pregnant, unnecessarily and unreasonably putting her and their unborn child at risk of death or great bodily harm.

36. Each Defendant officer had the duty and opportunity to intervene to prevent the use of excessive force against LeDarren and Jasmine and did nothing to assist or protect them or prevent the shooting.

37. At the time the Defendant Officers shot at LeDarren and Jasmine, LeDarren and Jasmine were not engaged in unlawful behavior.

38. LeDarren suffered multiple fatal gunshot wounds including shots in his left shoulder, both sides of his cheeks, his wrist, and his thigh.

39. After he was shot, LeDarren lay gasping for breath on his bed while a medic attempted to render him aid.

40. LeDarren was later declared dead as a result of his gunshot wounds.

41. As a result of the Defendant Officers' misconduct, Jasmine experienced extreme fear and emotional distress causing her water to break after LeDarren was shot and killed.

42. Once the Defendants stopped shooting, they handcuffed Jasmine, held her in the basement of the apartment along with other witnesses, and transported her in a police vehicle to the police station.

43. Defendant Officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, incomplete, and misleading versions of the events to their superiors and to the public.

44. To cover up their misconduct, Defendant Officers falsely claimed that LeDarren posed a threat sufficient to justify the use of deadly force.

45. The actions of the Defendants were taken jointly, in concert, and with shared intent.

46. As a direct and proximate result of the Defendants' misconduct, LeDarren suffered from terror and pain inflicted upon him, including severe personal injuries and extreme emotional distress, during the course of this brutal attack and as he died.

47. As a direct and proximate result of the Defendants' misconduct, LeDarren's minor children, mother, sister, grandparents, family members and his community suffered and continue to suffer, *inter alia*, severe grief, injury, pain and suffering, mental distress, loss of love, affection, society, companionship, consortium, pecuniary loss, and expenses, as well as other injuries as a result of LeDarren's death.

48. As a direct and proximate result of the Defendants' outrageous misconduct, Jasmine suffered from terror and severe emotional distress.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 Claim**
**against Individual Defendant Officers**

49. All of the foregoing paragraphs are incorporated as though fully set forth here.

50. The actions of the individual Defendant Officers, as alleged in the preceding paragraphs, violated LeDarren Mixon's and Jasmine Murray's rights under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable seizure, and their rights to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

51. LeDarren Mixon and Jasmine Murray were subjected to the use of excessive force in violation of their Fourth Amendment rights.

52. The Defendant Officers had the duty and opportunity to intervene to protect LeDarren Mixon and Jasmine Murray and to prevent the use of excessive force against them, yet they did nothing to assist them or prevent the shooting.

53. The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of LeDarren Mixon's and Jasmine Murray's injuries.

54. Defendants are jointly and severally liable for this conduct.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 *Monell* Claim**
**against Defendant Cities of Whitehall and Reynoldsburg**

55. All of the foregoing paragraphs are incorporated as though fully set forth here.

56. The actions of the individual Defendant Officers, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices

and/or customs of civil rights violations and unconstitutional practices of the Cities of Whitehall and Reynoldsburg and their Police Departments.

57. The Cities of Whitehall and Reynoldsburg, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

58. Despite the facts and circumstances surrounding this shooting which clearly demonstrate that the actions of the Defendant Officers were unreasonable and unlawful, upon information and belief, the Cities of Whitehall and Reynoldsburg have failed to effectively investigate or impose any discipline on the Defendant Officers for their illegal behavior.

59. At all times relevant, the Defendants Cities of Whitehall and Reynoldsburg and their Police Departments had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their police officers who engage in unjustified use of excessive and unreasonable force;

   b. the police code of silence;

   c. the failure to properly investigate the use of excessive and unreasonable force against civilians;

   d. the failure to properly discipline, supervise, monitor, counsel and otherwise control police officers who engage in unjustified use of excessive and unreasonable force; and/or

   e. the failure to properly train and supervise police officers to operate within the bounds of the constitution, particularly in regard to SWAT procedures, execution of warrants, discharging weapons at civilians;

   f. the use of non-specialized patrol officers and part-time, volunteer, auxiliary police for an allegedly high-stakes SWAT mission.

60. The aforementioned de facto policies, practices, and customs of the Whitehall and Reynoldsburg Police Departments include acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

61. The Whitehall and Reynoldsburg Police Departments have engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of their officers, thereby creating a culture or climate where members of the police departments can escape their acts of misconduct accountability with impunity.

62. These municipal defendants were the moving force behind the conduct of the Defendant Officers in shooting at LeDarren Mixon and Jasmine Murray – with high-powered assault rifles in their own bed – and killing LeDarren.

63. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

64. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

65. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice, and custom is further established

by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

66. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to LeDarren Mixon and Jasmine Murray because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

67. But for the belief that they would be protected – both by fellow officers and by the Whitehall and Reynoldsburg Police Departments – from serious consequences, the Defendant Officers would not have engaged in the conduct that resulted in the injuries to LeDarren Mixon and Jasmine Murray.

68. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the acts alleged in this complaint against LeDarren Mixon and Jasmine Murray.

69. The Cities of Whitehall and Reynoldsburg therefore acted as the moving force behind and the direct and proximate causes of the violations of LeDarren Mixon's and Jasmine Murray's constitutional rights and all injuries and damages suffered by them.

### THIRD CLAIM FOR RELIEF
### State Law Claim for Negligence - Willful, Wanton and Reckless Conduct against Individual Defendant Officers

70. All of the foregoing paragraphs are incorporated as though fully set forth here.

71. The Defendant Officers acted negligently when they violated their duty to exercise due care for LeDarren Mixon and Jasmine Murray.

72. The Defendant Officers committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while engaged in police functions.

73. The Defendant Officers' misconduct directly and proximately caused the wrongful death of LeDarren Mixon and the damages suffered by LeDarren Mixon and Jasmine Murray, as described above.

74. Defendants are jointly and severally liable for this conduct.

### FOURTH CLAIM FOR RELIEF
### Plaintiff McGee's State Law Claim for Wrongful Death Pursuant to Ohio R.C. § 2125

75. All of the foregoing paragraphs are incorporated as though fully set forth here.

76. LeDarren Mixon is survived by his heirs. His heirs have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance, advise, counsel, assistance, attention, and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

77. LeDarren Mixon's children, mother, sister, and family have suffered mental anguish caused by his death, as well as mental anguish as a result of the circumstances surrounding his death.

78. Reasonable funeral and burial expenses have been incurred.

79. The Defendant officers otherwise acted negligently, intentionally, willfully, wantonly, and/or recklessly in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of LeDarren Mixon and damages suffered by his Estate.

80. As a direct and proximate result of the actions of the Defendants in this complaint, LeDarren Mixon died, subjecting the Defendants to liability pursuant to Ohio R.C. § 2125.01-03.

#### FIFTH CLAIM FOR RELIEF
**Plaintiff McGee's State Law Claim for Survivorship**

81. All of the foregoing paragraphs are incorporated as though fully set forth here.

82. Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, LeDarren Mixon was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

83. The Defendant officers owed LeDarren Mixon a duty of care, they breached that duty, and their breach of duty was the proximate cause of LeDarren Mixon's death.

84. The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

#### SIXTH CLAIM FOR RELIEF
**Ohio Law – Intentional and/or Negligent Infliction of Emotional Distress**

85. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

86. Defendants Casto's, Baker's, and Danzey's conduct was intentional and/or negligent and involved numerous breaches of the standard of care.

87. Defendants knew or should have known that their conduct would cause LeDarren Mixon and Jasmine Murray emotional and psychological harm.

88. Defendants' conduct was willful, wanton, and/or reckless, and so outrageous in character and extreme in degree as to go beyond all bounds of decency.

89. As a direct and proximate result of said Defendants' conduct, either individually and/or collectively, LeDarren Mixon and Jasmine Murray faced and appreciated actual and serious

peril, and they suffered permanent injuries, including, *inter alia*, physical harm, and serious and severe mental, emotional, and psychological injuries and damages.

90. LeDarren Mixon's and Jasmine Murray's injuries and damages were reasonably foreseeable.

91. The mental anguish suffered by LeDarren Mixon and Jasmine Murray as a result of Defendants' conduct is of a nature that no reasonable person could be expected to endure it.

### PRAYER FOR RELIEF

Plaintiffs demands that judgment be entered in their favor on all counts and prays the court to award the following relief:

a. An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate Plaintiffs for the injuries and damages suffered;

b. An award of punitive damages against the individual Defendant Officers in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

c. An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

d. All such other relief to which Plaintiffs are entitled and/or this Court deems equitable.

***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***

Dated: June 24, 2019

*/s/ Sarah Gelsomino*
Sarah Gelsomino (0084340)
Jacqueline Greene (0092733)
Terry H. Gilbert (0021948)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
T: 216-241-1430
F: 216-621-0427
sgelsomino@f-glaw.com
jgreene@f-glaw.com
tgilbert@f-glaw.com

Marcus Sidoti (0077476)
JORDAN | SIDOTI, LLP
The Terminal Tower
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-357-3305
F: 216-696-1411
marcus@jordansidoti.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 24, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                                        */s/ Sarah Gelsomino*
                                                                           Sarah Gelsomino
                                                                           *One of the Attorneys for Plaintiffs*